**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **NONEND INVENTIONS N.V.,**<br><br>    **Plaintiff and Counterclaim-<br>    Defendant,**<br>  v.<br><br>**SPOTIFY USA INC., et al,**<br><br>    **Defendants and Counterclaim-<br>    Plaintiffs.** | **Case No. 12-1041-GMS<br>Case No. 13-00389- GMS<br>JURY TRIAL DEMANDED** |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT NONEND INVENTIONS N.V.'S
ANSWERING CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

| **Title** | **Page** |
|---|---|
| I. INTRODUCTION | 1 |
| II. DISCLAIMER REQUIRES CLEAR AND EXPLICIT DISAVOWAL OF CLAIM SCOPE | 1 |
| III. THERE IS NO CLEAR AND EXPLICIT DISAVOWAL OF ALL NETWORKS EXCEPT PEER TO PEER | 3 |
|     A. Spotify's Arguments Are Predicated on an Oversimplified View of the Network World | 3 |
|     B. Nothing in the Specification Limits the Scope of the Claims to Only Pure Peer-To-Peer Networks | 4 |
|     C. There is No Disclaimer of Hierarchical Networks | 6 |
| IV. TERMS FOR CONSTRUCTION | 9 |
|     A. Many of Spotify's Constructions Fall With its Disclaimer Argument | 9 |
|         1. The "Network" and "System" Terms | 9 |
|         2. Consumer Node | 10 |
|     B. The "Streaming" Terms | 10 |
|     C. Peer Node | 10 |
|     D. Device | 11 |
|     E. The "Communication Channel" Terms | 11 |
|     F. Production Node | 12 |
|     G. Central Node | 13 |
|     H. Autonomously | 13 |

## TABLE OF AUTHORITIES

**Cases** **Page**

*Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004)     7

*Epistar Corp. v. ITC,* 566 F.3d 1321 (Fed. Cir. 2009)     2, 6

*Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327 (Fed. Cir. 2004)     2, 12,

*Honeywell Int'l, Inc.* v. *ITT Indus.,* 452 F.3d 1312 (Fed. Cir. 2006)     6

*In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004)     7

*Invitrogen Corp. v. Biocrest Mfg.,* L.P., 327 F.3d 1364 (Fed. Cir. 2003)     12

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985 (Fed. Cir. 1999)     2

*Northern Telecom Ltd. v. Samsung Electronics Co.*, 215 F.3d 1281 (Fed. Cir. 2000)     8

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005)     2

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)     2, 7, 9

*Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173 (Fed. Cir. 2006)     2

## I. INTRODUCTION

Spotify devotes most of its opening brief arguing that the patents-in-suit are only directed to peer-to-peer networks. Spotify argues both that (1) the patentees explicitly disclaimed hierarchical networks and therefore only peer-to-peer networks can fall within the scope of the claims and (2) the words of the patentees themselves limit the scope of the claims solely to peer-to-peer networks. Neither is true.

*First*, while Spotify claims there is disclaimer, it fails to point to a single explicit, clear and unambiguous statement of disavowal of all networks except peer-to-peer networks. Tellingly, Spotify does not even articulate the high legal standard for disclaimer. When each supposed statement of disclaimer highlighted by Spotify is examined under the Federal Circuit standard, there is no disclaimer. *Second*, Spotify repeatedly argues that the specification makes clear that the invention must be limited to peer-to-peer networks. Yet when the specification's words as a whole are examined in context—not selectively quoted or woven together with Spotify's paraphrasing to inaccurately portray its teachings—it is clear that the patents cover far more than Spotify contends. Every time Spotify sees the word node in the specification, it wants the Court to see "peer" node. The simple fact is the word "peer" only appears five times in the patents' specification. And contrary to Spotify's arguments, it is the patentees' words themselves that demonstrate that the true scope of the patents' claims are not limited to peer-to-peer networks.

## II. DISCLAIMER REQUIRES CLEAR AND EXPLICIT DISAVOWAL OF CLAIM SCOPE

Despite using half of its opening brief to argue that Nonend disclaimed all but peer-to-peer network data distribution, Spotify never articulates the legal standard for disclaimer. There

1

is a reason for this omission; the standard for establishing disclaimer is extremely high. The Federal Circuit requires that Spotify establish that the inventors "demonstrate[d] an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification *expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope*." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002) (emphasis added).[1] "A patentee's discussion of the shortcomings of certain techniques is not a disavowal of the use of those techniques in a manner consistent with the claimed invention." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1335 (Fed. Cir. 2009). Moreover, disparaging comments alone do not show a manifest or express disavowal of the criticized subject matter. *See, e.g., Ventana Med. Sys., Inc. v. Biogenex Labs., Inc.*, 473 F.3d 1173, 1180-81 (Fed. Cir. 2006) (finding that general comments distinguishing the prior art were not sufficient to limit the term "dispensing" to "direct dispensing"); *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1365-67 (Fed. Cir. 2004) (finding descriptions of the deficiencies of using mainframe computers did not exclude mainframes from the term "user computer" because the specification as a whole did not express a clear disavowal of that subject matter). Despite only appearing within the specification five times, Spotify wants this Court to insert "peer" in every instance where the term "node" or "network" or "system" or "device" appears. This is improper. *See Johnson Worldwide Assoc., Inc. v. Zebco, Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) (canons of claim construction require that "general descriptive terms will ordinarily be given their full meaning; modifiers will not be

---

[1] Although Spotify does not rely on any statements made in the prosecution history to support its disclaimer argument, the burden is equally as high with respect to prosecution statements. *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1308 (Fed. Cir. 2005) (defining the claimed invention as dual pathways over prior art did not disclaim same destination pathways); *Golight, Inc. v. Wal-Mart Stores, Inc.,* 355 F.3d 1327, 1332 (Fed.Cir. 2004) (finding no disclaimer because the statements in the prosecution history do not constitute a clear and unmistakable departure from the ordinary meaning of the term).

added to broad terms standing alone.")  Instead, Spotify can only prevail by demonstrating that its identified specification statements are unmistakable disavowals of every kind of possible data distribution network other than peer-to-peer networks.  But when each alleged statement of disavowal is examined under this proper express disavowal standard, Spotify's arguments fail.

### III. THERE IS NO CLEAR AND EXPLICIT DISAVOWAL OF ALL NETWORKS EXCEPT PEER TO PEER

#### A. Spotify's Arguments Are Predicated on an Oversimplified View of the Network World

Spotify incorrectly limits the networks described by the patents-in-suit to just two types: peer-to-peer and hierarchical. This is because the core of Spotify's disclaimer argument is that Nonend disclaimed hierarchical networks and therefore all that remains within the claims' scope are peer-to-peer networks.  In order for this argument to succeed, Spotify must first establish this predicate disclosure of only two networks.  To wit, assuming *arguendo*, that Nonend did disclaim hierarchical networks,[2] Spotify's black and white world would necessarily beget the result of leaving only peer-to-peer networks.  In other words, Spotify argues that "the only networks disclosed in the specification are peer networks and indeed the specification clearly states that hierarchical networks are *not* the invention." (Spotify Brief at p 4.)  Spotify is wrong.

The specification supports and the claims are directed to both hybrid and pure peer-to-peer implementations of the invention.  Indeed, the specification plainly discloses more than these two types of data distribution networks.  Spotify's oversimplified view ignores the specification's clear acknowledgment of many types of data distribution networks and disclosure of more than just these two networks types. In particular, the inventors wrote: "For that matter numerous applications of so-called peer-to-peer networks that may or may not have client/server

---

[2] Although there is no disclaimer of pure hierarchical networks found anywhere in the specification, Nonend does not contend that the asserted claims of the patents-in-suit are directed to pure hierarchical networks.

3

technology are known." (A-46 at 19-21.) Thus the inventors acknowledge that hybrid networks—a mix of hierarchical and nonhierarchical networking concepts—existed in the art.[3] The inventors specifically contemplated hybrid networks within the specification, and as discussed below described a novel method to improve both hybrid and pure peer-to-peer network data distribution. Moreover, Spotify admits in its brief that "computer networks can be categorized into **several** broad types." (Spotify Brief at 2 (emphasis added).) Nevertheless, as detailed below, Spotify cannot point to a single clear and express statement that hybrid networks are not within the scope of the claims.

### B. Nothing in the Specification Limits the Scope of the Claims to Only Pure Peer-To-Peer Networks

In an effort to bolster its case for disclaimer, Spotify attempts to characterize the patents-in-suit as covering "only a particular use of P2P technology." (Spotify Brief at 4.) To support this characterization, Spotify first cites to the abstracts in the patents-in-suit, claiming that they are evidence that "hierarchical networks are *not* the invention." *Id.* (emphasis in original.) When the abstracts are read carefully, they do not reveal any disclaimer.

Spotify starts its argument by quoting the '508 patent's description of a peer-to-peer network and Nonend has no quibble with that. The '508 patent is directed to a peer-to-peer network application – it uses the term "peer" in the title, abstract, and claims. The claim are directed to a peer-to-peer data distribution that may or may not be part of a lager hybrid network. We know this because the patentees actually use the word "peer" in the claims—something Spotify cites with emphasis. Importantly, however, it is the *only* patent where the term appears in the title, abstract and claims. Yet Spotify glosses over this point when suggesting that the

---

[3] Despite initially denying the disclosure of anything other than hierarchical and peer-to-peer networks, Spotify later acknowledges the disclosure of hybrid networks. (Spotify Brief at 7.)

4

remaining patents should be similarly limited.

The other five patents simply are not restricted to peer network applications; in fact, the word "peer" never appears in their titles, abstracts or claims. As it must, Spotify acknowledges that these patents "do not necessarily use the word "peer" in their abstracts" but argue they "*implicitly* describe peer-to-peer networks." Under a clear and explicit disclaimer standard, this "implicit" argument fails. The patentees' actual words are explicit: the '752, '138 and '862 patents describe media player systems and the '513 and '315 patents describe a network of nodes. The word "peer" is simply never used. In fact, Spotify is forced to paraphrase these abstracts to suggest they describe peer-to-peer networks; thus it is Spotify who adds the word "peer" that the patentees did not use. Spotify inserts the term "peer" seven times in characterizing these five patent abstracts where "peer" is used exactly zero times. For example, Spotify erroneously paraphrases the '138 and '862 patent abstracts:

> "[T]he '138 Patent abstract describes searching for and building a network of *peers* to enable streaming of content between *peers*; the '862 Patent abstract describes 'streaming content over a network that enables communication between' *peer* consumer nodes such that play-back of content at a receiving *peer* node occur as another part of the content is being received…."

(Spotify Brief at 4 (emphasis added).). Yet the inventors never use the word "peer" in the abstract. It is Spotify's own words it would have the Court take as evidence of disclaimer rather than those of the inventors. The abstracts' express language, however, do not demonstrate a clear and explicit disclaimer that would limit the claims of all the patents-in-suit to peer-to-peer networks because the abstracts never describe the claims as directed only to "peer" networks.

Next, Spotify argues that "the invention" language in the specification limits the scope of the claims only to peer-to-peer applications. (Spotify Brief at 5-6.) Spotify points to the specification's language that characterizes "the invention" or the "device according to the invention" as describing "a P2P network comprising peer nodes." (*Id.* at 5.) Yet again, Spotify

5

substitutes its own language for that of the patentees. The "invention" statements identified by Spotify evidence no such characterizations. Not once does any statement characterizing the invention or the device according to the invention ever use the word "peer."[4] Explicit disclaimer requires more. Spotify closes this section by arguing the public is entitled to take the patentees at their word. Nonend agrees. The words of the patentee *never* describe the "present invention" or any other type of overall description of the invention as explicitly a peer-to-peer network. Spotify cannot point to a single explicit statement to this effect because there is none.

### C. There is No Disclaimer of Hierarchical Networks

Because the specification contains no explicit statement limiting the claims to peer-to-peer networks, Spotify must twist a discussion of the prior art into a disclaimer of everything but peer networks. Specifically, Spotify argues that the patentees distinguished their invention from prior art hierarchical systems and from systems that rely on central control by citing to a passage from the Background of the Invention section that discusses multicast and multi-agent prior art. (Spotify Brief at 6.) The cited passages (A-46 at col. 1:36-47) merely identify the hierarchic nature of those systems and hardly denigrate them as Spotify asserts. Moreover, even if the specification disparaged multicast and multi-agent systems (which it does not), such statements still would not rise to the level of clear disavowal required by the Federal Circuit. *See Epistar Corp. v. ITC*, 566 F.3d 1321, 1335 (Fed. Cir. 2009) (discussion of the shortcomings of certain techniques does not disavow using those techniques in a manner consistent with the claimed

---

[4] Spotify cites several cases that hold "present invention" language can be used to limit the scope of the claims, but in each case, unlike here, the specification actually connects the present invention language to the actual limitation. For example, Spotify cites *Honeywell Int'l, Inc.* v. *ITT Indus.,* 452 F.3d 1312, 1318 (Fed. Cir. 2006). In *Honeywell*, the Court limited the term fuel filter because on at least four occasions, the written description refers to the fuel filter as this invention' or the present invention'. Here, the specification *never* refers to "the invention" as peer-to-peer only.

6

invention).[5]

The Federal Circuit's decision in *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359 (Fed. Cir. 2004), although procedurally different, is particularly instructive on this point. In that case, the patentee, seeking to avoid invalidating prior art, sought a narrow construction for the term "user computer" and argued that it should be limited to "single user-computers." The patentee argued that the Background of the Invention section "point[ed] out the deficiencies of multi-user computers such as mainframes," which was the asserted prior art, and therefore the excluded those mainframes from the definition of user computers. *Id*. at 1365. The Federal Circuit noted that the specification highlighted problems inherent with running multi-user applications, but that this language failed to disclaim multi-user mainframe computers networked to a central database. *See id*. at 1366. The facts of instant case are even more removed from those of *In re Am. Acad. of Sci. Tech. Ctr.* While true that the patent briefly characterizes the prior art multicast and multi-agent systems, it hardly highlights their inherent problems. Moreover, even if it were true, as Spotify asserts, that the specification denigrates these two prior art systems, the statements in the specification do not achieve the level of "expressions of manifest exclusion" the Federal Circuit requires to support such as sweeping disclaimer that is urged by Spotify. *Id*. at 1365 (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d at 1325).

Next, Spotify claims that the statement "it is possible to build up a data network without hierarchy in contrast to the classic networks and the internet" is a clear disavowal of hierarchical

---

[5] Spotify's reliance on *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004) is misplaced. Unlike in this case, the inventors acted as their own lexicographers in defining the solubilizers as surface active agents which necessarily limited the scope of the claims. That and the heavy criticism leveled at other solubilizers in the specification operated as a disavowal of claim scope. *See id*. at 1340. Here, the patentees did not act to define all nodes as peer nodes nor does distinguishing the novelty over the prior art systems rise to the same level of criticism relied on by the *Astrazeneca* Court. In addition, the Court also relied on the preferred embodiment and statement in the prosecution history as being explicitly limiting. *See id*. at 1340-41. None of these factors are present in the instant case.

7

networks and evidences clear intent to claim only non-hierarchical peer-to-peer networks. If Nonend understands Spotify's argument correctly, this statement supposedly disclaims all possible hierarchic structure from the scope of the claims including hybrid networks, leaving only pure peer-to-peer networks. The patent specification, however, identifies other existing network types that could have elements of hierarchy and still be within the scope of the claims. At most, these words disparage pure hierarchical networks which the claims themselves to do not cover. The words Spotify identifies, however, do not disclaim hybrid networks in which elements of both peer-to-peer and hierarchical networks may be mixed.

Finally acknowledging the specification's disclosure of these hybrids networks for the first time, Spotify argues that the specification's statement that "an organic network having a dynamic topology wherein data transfer between server and client takes place like in a device according to the invention is not described in them" (where "them" is the hybrid networks) constitutes disclaimer. (Spotify Brief at 7.) Again, Spotify is wrong.

First, this is not clear disclaimer language but rather the patentees' explanation that known networks, *i.e*. the prior art, do not describe the novel invention of the patents-in-suit. In other words, the patentees were explaining that the claimed invention is different from the prior art rather than making a disclaiming statement that the claimed invention has nothing to do with hybrid networks. Second, that statement fails to explicitly limit the claims to peer-to-peer networks. It is a simple statement indicating that what is claimed is not what is shown in the prior art and not, as Spotify suggests, a complete disclaimer of any type of network with hierarchical elements. This one sentence in the specification is "far too slender a reed to support judicial narrowing" of the claims of all the patents-in-suit. *Northern Telecom Ltd. v. Samsung Electronics Co.*, 215 F.3d 1281, 1294 (Fed. Cir. 2000).

The very words of the patentees contradict Spotify's disclaimer argument, which explains why time and again Spotify uses its own language to manufacture disclaimer. In essence, Spotify urges the Court to severely limit the duly issued claims based on a passage where the patentees describe, among other things, advancement in the art of hybrid network data distribution.[6]

Again, the term "peer" only appears five times in the entire written description, yet Spotify would have the Court read a peer limitation into every claim contrary the patentees' own claim language. The Federal Circuit requires much more than explanatory or distinguishing statements regarding prior art to find disavowal and Spotify cannot meet the high burden of "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc.*, 299 F.3d at 1325.

## IV. TERMS FOR CONSTRUCTION

### A. Many of Spotify's Constructions Fall with its Disclaimer Argument.

#### 1. The "Network" and "System" Terms[7]

Spotify admits that its disclaimer theory is the basis for its proposal that all of its constructions for the "network" and "system" terms are limited to "P2P systems." (*See* Spotify Brief at 18.) As set out above, however, the patentees did not clearly and explicitly limit the patents-in-suit to pure peer-to-peer network applications. Consequently, the sole basis advanced by Spotify for its proposed constructions must fail. As fully set forth in Nonend's opening brief, each of the "network" and "system" terms require no construction and should instead be accorded their plain and ordinary meaning. (*See* Nonend Brief at 13-17.)

---

[6] Spotify relies solely on the specification for its disclaimer argument and does not point to any statement of disclaimer in prosecution history.
[7] The "Network" terms include the claim terms "network," "peer-to-peer network," and "network of media players." The "system" terms include the claim terms "peer system" and "a system for distributing media content."

9

### 2. Consumer Node

Both parties proposed nearly identical constructions for this term with the only difference being Spotify's insistence that a "consumer node" is a "peer node." (*See* Spotify Brief at 17.) Again, Spotify contends that Nonend "explicitly disclaimed hierarchic systems" improperly concludes that "all nodes recited by the claims (including 'consumer nodes') must also be peer nodes." *Id.* For all the reasons set forth above, there is no explicit disclaimer as Spotify contends. For the reasons set out in its opening brief, Nonend's construction for "consumer node" accurately reflects the teachings of the claims and specification. (*See* Nonend Brief at 12.)

### B. The "Streaming" Terms

Nonend's opening brief squarely addresses Spotify's unduly narrow construction and those arguments will not be repeated here except to address whether the content *must be played* for streaming to exist. Spotify argues that the prosecution history requires a construction that the content must be played or it would run afoul of the Henzerling reference. (Spotify Brief at 12.) Henzerling relates to a situation where the music file must be downloaded in its entirety before it could be played and the patentee's distinguished their invention over Henzerling in this regard. Nonend's construction comports with the prior art and its opening brief distinguishes the claimed streaming from Henzerling's downloading while at the same time avoiding an unduly limiting construction that would *require*, and not merely enable, the playing of content before the entire file has been received.

### C. Peer Node

In describing "the essence of what a peer node is" Spotify states "each peer node is equal to any other peer node because each can perform the functions of all others." (*See* Spotify Brief at 13.) Spotify also writes: "This fully comports with the standard dictionary definition of 'peer' – 'one that is of equal standing with another'…." (*Id.*) There is no argument that a peer is one of equal standing with another but this is precisely the type of customary and ordinary meaning that even a lay juror can comprehend. Spotify's requirement that "each can perform the

10

functions of all others," however, goes too far. The claim language itself describes the function of the peer, namely, a transmitter or receiver. (A-52 at col. 14:65–A-53 at col.15:16.) One of skill in the art would understand the equal ranking among peers in network even if those peers are performing different tasks. There is no requirement that each node perform all the functions of the other nodes in order for them to be peers and no reason to define "peer node" at all.

### D. Device

To support its contention that the term "device" is synonymous with "peer node" Spotify cites to the April 27, 2009 Notice of Allowance for the '508 Patent. (*See* Spotify Brief at 15; A-456.) Spotify's reliance on the Examiner's statement is misplaced. While Spotify is correct that the Examiner characterizes "the limitation 'peer node' as a device," it neglects to acknowledge that the Examiner also interpreted "the limitation 'computer readable medium' as a *device* that stores computer instructions and participates in providing the computer instructions to a computer processor for execution."[8] Clearly, the Examiner used the term "device" in a broad sense, namely, one that equates to a plain and straightforward reference to a piece of equipment that can perform some specified function. For Spotify to argue otherwise requires it to confront the inconsistency of its theory that would mandate that the "peer node" and "computer readable medium" limitations are synonymous because both are interpreted by the Examiner to be a device.

### E. The "Communication Channel" Terms[9]

Spotify writes: "What claim 1 does not have, however, is an explicit statement of what the other ends of those communication channels are connected to." Spotify is exactly correct. The patentees did not explicitly limit their claims by including to *what* the communication

---

[8] '508 Patent file history, April 27, 2009 Notice of Allowance at 2 (A-456) (emphasis added.)
[9] These terms appear in the '862 patent, claims 1, 12 (A-230).

11

channels are operably connected.[10]  Spotify continually urges a focus on the words of the patentees yet here Spotify goes even further and urges the Court to rewrite and narrow the claims by including Spotify's additional wording.  Spotify argues that Nonend's construction impermissibly broadens the scope of the claims, but the claim language as a whole is broad on its face.  Rather, it is Spotify who improperly narrows this claim term. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1331-32 (Fed. Cir. 2004) (rejecting attempts to improperly introduce limitations from the specification into the claim language).

### F. Production Node

Spotify acknowledges that a production node "makes the content, either generated or present in the device itself, available to one or more devices," but simply ignores this teaching in its proposed construction. (Spotify Brief at 15.)   Similarly, it ignores the teaching that a production node adapts, adds and/or generates its own content.  (A-48 at col. 5: 40-45.) Its construction is incomplete.

Spotify also argues that the term "node" must mean peer node because the various names "are merely functional descriptions of what the peer node is doing at a particular time."[11]   This is a narrow and incomplete reading of the specification. For example, the specification also describes a router node which does "nothing else but receiving and sending on content in the network by order of production nodes or consumer nodes."  (A-48 at col. 12-15.)  This is evidence that the various names are not just descriptions of what a node is doing at a particular

---

[10] Claim 1 of the '862 patent uses the open-ended "comprising" language and it is not necessary for the Court to divine what could be connected to the other end of the channel. *See, Invitrogen Corp. v. Biocrest Mfg.,* L.P., 327 F.3d 1364, 1368, (Fed. Cir. 2003) ("The transition 'comprising' in a method claim indicates that the claim is open-ended and allows for additional steps."); MPEP §2111.03.

[11] Spotify's argument that the production node must be a "peer" is addressed in the prior section on disclaimer.  Again, the words of the patentee are clear:  it is a production node not a production peer that is claimed.

time as a router node is always a router node. The descriptions are what the node is and the Court should not conflate the constructions of specific functional nodes described in the claims into one generic "peer" node as Spotify suggests.[12]

### G. Central Node

Spotify states that Nonend provides no intrinsic evidence for its construction of central node (page 16). This is simply untrue. As noted in Nonend's opening brief, U.S. Pat. No. 5,511,168 ("the '168 patent") (A-354–A-363) incorporated into the specification relates to a multicast virtual circuit arrangement where a source node (or central node) creates virtual circuits among a group of destination nodes. (*See* A-360, '168 patent at col. 3:11-24; 5:49-59.) Nonend's construction captures the source node control of virtual circuit pathways described in the '168 patent and incorporated by the patents-in-suit to propose a proper construction for central node.

### H. Autonomously

The specification further contradicts Spotify's construction that includes the "independent of other nodes" limitation where is states: Special however is that the consumer node is able to act entirely *autonomous* **and** *independent of the production node*." (*See* A-48 at col. 5:41-46 (emphasis added).) If "autonomous" were to include the concept of "independent of other nodes," it would not be necessary to state that the consumer node acts independent of the production node. This is just one example of how a positive construction where none is required can cause confusion. The use of "and" plainly suggests two benefits of the consumer node – its ability to act (i) autonomously **and** (ii) independent of the production node. Moreover, the claim

---

[12] Nonend does not understand how its construction for a "production node" can be interpreted as a central node in a hierarchic system. (Spotify Brief at 16.) The proposed constructions of production node and central node are different and distinct. Nonend reserves the right to address this aspect of Spotify's argument at such time as it is clear to Nonend.

language defines what actions the node undertakes in an autonomous fashion: searching and determining. (*See* A-352 at col. 15:50-55; A-169 at col. 16:50-54.) Defendants seek improperly to import this second separate and unlimited benefit into the definition of "autonomously."

Dated:  November 15, 2013            STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606
      stamoulis@swdelaw.com
Richard C. Weinblatt #5080
      weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone:  (302) 999-1540

OF COUNSEL:
Richard C. Vasquez
Jeffrey T. Lindgren
Eric W. Benisek
Robert S. McArthur
Stephen C. Steinberg
VASQUEZ BENISEK & LINDGREN LLP
3685 Mt. Diablo Blvd., Suite 300
Lafayette, CA 94549
Telephone: (925) 627-4250
Facsimile: (925) 403-0900
rvasquez@vbllaw.com
jlindgren@vbllaw.com
ebenisek@vbllaw.com
mcarthur@vbllaw.com
ssteinberg@vbllaw.com

*Attorneys for Nonend Inventions, N.V.*