

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6000
www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140 Direct Phone
(302) 658-1192  Fax

September 2, 2014

**BY E-FILE**

The Honorable Gregory M. Sleet
United States District Court
  for the District of Delaware
U.S. Courthouse, 844 King Street
Wilmington, DE  19801

PUBLIC VERSION
SEPTEMBER 9, 2014

Re:  Nonend Inventions N.V. v. Spotify USA Inc., et al.
     D. Del., C.A. No. 12-1041-GMS; C.A. No. 13-389-GMS

Dear Judge Sleet:

Nonend's tardy request for permission to file a summary judgment motion (D.I. 67) should be denied for three reasons.  First, Nonend requests that the Court enter summary adjudication on an infringement theory that is not documented in its expert disclosures, and for which it has adduced no evidence.  Specifically, Nonend has made no showing of direct infringement of any asserted claim by Spotify (or by anyone or anything else, for that matter).  Every asserted claim is a method claim, and Nonend has only asserted indirect infringement by what it calls the Spotify Service.  Nonend has utterly failed to provide evidence of direct infringement by anyone, through testing or any other means.  Without proof of direct infringement, Nonend cannot prevail on a theory of indirect infringement.  Second, even putting aside Nonend's failure to show direct infringement, in its attempt to show indirect infringement, Nonend ignores non-infringement theories that are consistent with or entirely unaffected by the portions of the Court's *Markman* order that Nonend references in its letter.  For every asserted claim, at least one element is missing from the way Spotify service operated under the Court's claim construction.  Nonend simply ignores these non-infringement defenses in its letter.  Third, Nonend's tardiness confirms that Nonend has never viewed the issues it points to as case dispositive — not during the *Markman* briefing, and not even upon entry of the Court's *Markman* Order.  Rather, Nonend's untimely request appears to be an attempt unfairly to distract and prejudice Spotify during the rush of trial preparation.

Nonend asks this Court to enter "summary judgment of direct infringement of the Asserted Claims by the Spotify Service."  But Nonend has never before asserted that the Spotify Defendants directly infringe any currently-asserted claim; Nonend only asserts indirect infringement by the Spotify Defendants.  Nonend's expert report makes this clear (Nonend

The Honorable Gregory M. Sleet
September 2, 2014
Page 2

dropped its allegations regarding claim 23 of the '508 patent, and does not ask for summary judgment of the remaining '508 claims in its letter brief):

> **10.1.  Direct Infringement**
>
> As discussed in detail above, the evidence I have reviewed establishes direct infringement of multiple claims of the patents-in-suit by users of the Spotify Service. In addition, as discussed in Section 4.14, the evidence I have reviewed establishes that Spotify directly infringes claim 23 of the '508 patent.

Nonend did not identify a theory of direct infringement (much less any evidence) of direct infringement by Spotify, negating entry of summary judgment of direct infringement against any Spotify Defendant.

Nonend only asserts indirect infringement claims against the Spotify Defendants, and every currently-asserted claim is a dependent method claim.  To prove indirect infringement, Nonend must therefore demonstrate that a third party actually carried out each step of a recited method claim; reference to infringement by "the Spotify Service" is legally insufficient.[1] Nonend cannot and, in fact, did not even attempt to do so.[2]  Nonend's infringement expert did not analyze a single line of source code in his expert report, and did not test whether content was delivered in accordance with the limitations of any claim.  He admitted that he did not even know what a method claim was, or what was required to prove infringement of a method claim.[3] As to the actual operation of the service, he admitted that he had "no idea" what actually happened during use of the Spotify Service:

> Q   Professor Dunsmore, you testified that you have used the Spotify software before.  Your report, however, doesn't make any mention of testing that you performed on the Spotify software, right?
> A   That is correct, *I've done no testing on it.  I've just used it as a typical user would*.
> ...
> Q   You haven't analyzed whether your use of the Spotify system actually reached out to any peers, right?
> A   That is correct.  *I have no idea what is going on*.  That's all

---

[1] *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008).
[2] The passage recited in Nonend's letter brief demonstrates that Nonend's analysis is based on drawing a large circle around various entities without distinction ("includes but is not limited to, the facilitation of audio and/or video content streaming among Spotify servers and/or among peer users as embodied by all versions of Spotify's service, websites, and the desktop client software . . . ."). This imprecision violates the requirements of *Limelight*.
[3] 6/26/2014 H. Dunsmore Dep. Tr. 256:13-257:4. ("Q   What do you understand is required in order to demonstrate infringement of a method claim?  A   I don't know.").

The Honorable Gregory M. Sleet
September 2, 2014
Page 3

> being handled by Spotify for me in terms of where the music is coming from.[4]

Details regarding the operation of the Spotify Service entail far more than the single-paragraph summary recited in Nonend's letter brief. Dr. Dunsmore's characterization certainly is disputed, considering his admission that he did not know how the system actually worked. Thus, the actual operation of the service, and whether the use of the Spotify service occurred in accordance with the recited limitations of the asserted claims, *is* disputed.

Nonend's failure to show an act of direct infringement is fatal to its case. But even if we assume, contrary to fact, that Nonend can somehow prevail without showing direct infringement, Nonend still cannot obtain summary judgment because it has not rebutted each of Spotify's specific non-infringement arguments, which take into account the claim constructions as adopted by the Court, or which did not depend on the proposed constructions. Nonend points to three rulings of the Court which it believes are favorable to its infringement case (without, of course, pointing out how deleterious those same rulings will be to the validity of the Nonend patents at trial). But Nonend ignores other Spotify non-infringement arguments that take into account the Court's rulings on these issues, or are entirely unrelated to these rulings of the Court. Indeed, Spotify continues to have strong non-infringement arguments for *every single asserted claim under the Court's current claim construction rulings*. These are all ignored by Nonend in its letter brief, and for that reason, the Court should deny Nonend's motion.[5]

For example, several asserted claims, including claim 28 of the '138 patent recite a step of "evaluating the quality and reliability of a connection" between one media player and another media player. But Spotify's engineers directly rebutted Nonend's allegation:



Similar limitations are required for claims 5 and 17 of the '862 patent. As another example, asserted claims 27, 28, and 37 of the '138 patent each include a limitation of independent claim 22, which recites a media player "searching for other devices in said network running the media player software *while receiving* at least a part of said streaming content" received from another media player. Again, Spotify's engineers explained that does not happen:



---

[4] 6/26/2014 H. Dunsmore Dep. Tr. 173:13-174:5.
[5] Nonend's letter does not address its indirect infringement claims against the Spotify Defendants, conceding that issues of fact remain concerning the elements of induced and contributory infringement. Spotify therefore does not address those additional requirements.
[6] 1/24/2014 L. Strigeus Dep. Tr. 291:4-8 (objection omitted).

The Honorable Gregory M. Sleet
September 2, 2014
Page 4

[REDACTED]

    Nonend's letter brief admits that disputed issues of fact remain regarding whether a Spotify client can act independently when the claims so require (i.e., whether a client can change roles on its own initiative).[8] Those disputes also apply to claims requiring "autonomous" action by the client, including claims 27, 28, and 37 of the '138 patent; claims 36 and 40 of the '513 patent; and claim 37 of the '315 patent. The '138 claims, for example, require that a desktop client "searches autonomously to identify other devices in a network running the media player software." This does not happen. And as pointed out in Dr. Rubenstein's rebuttal report, a [REDACTED]

    Other disputed issues remain concerning each of the asserted claims, some of which require that steps take place in a particular order or simultaneously, and such requirements are not met.

    Claim 37 of the '315 patent, for example, requires that specific acts take place between three consumer nodes: content received by a first consumer node from a second consumer node must be "streamed" while another part of the same content is also received from a third consumer node, and that the a consumer node "autonomously determine" when to receive from the second or third node (or both) based on an evaluation of the two connections. Whether these steps were ever practiced, much less with the recited simultaneity, is disputed, as are the "autonomously" and "evaluation" limitations.

    More globally, and contrary to Nonend's suggestions, the resolution of the claim construction dispute does not demonstrate that Spotify practices each asserted claim. Indeed, Spotify's claim construction proposals were not Spotify's "non-infringement theories."[10] While the Court's construction of streaming includes traditional downloading (data packages do not need to be played as they are received), it requires a "continuous transmission of data packages that may be played by the receiver while the transmission is occurring." [REDACTED] This is explained in Dr. Rubenstein's expert disclosure, and is completely ignored by Nonend.

    Nonend's declaration that "streaming" may occur between a Spotify server and a desktop client also does not change the outcome as Nonend suggests. Many of the asserted claims (e.g.,

---

[7] 1/29/2014 G. Kreitz Dep. Tr. 120:18-25.
[8] Nonend's Letter Brief at note 2.
[9] Claim Construction Order (D.I. 66) at 14.
[10] As stated in Spotify's letter brief, the construction-related issues identified therein would necessarily result in Spotify not practicing at least one element of each claim, rendering summary judgment of noninfringement appropriate. Spotify did not concede infringement if the claims were otherwise construed, and did not address other claim limitations in its letter.

The Honorable Gregory M. Sleet
September 2, 2014
Page 5

the '508, '138, '513, and '513 claims) explicitly require that content be streamed between clients or media player devices (not a server).  Indeed, as Nonend's letter brief apparently concedes through its silence, there is no evidence that the communication between two clients ever occurred in accordance with the claims as interpreted by the Court.  Likewise, while Nonend may read between the lines of its recited "comprising" limitations to include a system with hierarchy, it still must prove that the recited limitations are actually satisfied (several of which explicitly require operation independent of a server, or that content be retrieved from a particular source in a particular way).

That the claim construction issues identified in Nonend's letter brief are not case dispositive is confirmed by its past inaction and its tardiness here.  Had Nonend truly believed that a *Markman* order in its favor would be dispositive, then one would expect Nonend to have submitted a timely request.  It did not.  Nonend also did not request a cross-motion for summary judgment as part of its June 5, 2014 letter opposing Spotify's timely request for summary judgment.  And even when the Court issued its order on August 1, Nonend waited another 19 days before filing its letter request.  Nonend's untimely submission is an effort to evade a trial on the merits, and should be denied.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner
provner@potteranderson.com

PAR/mes/1164518
cc:  All counsel of record – by CM/ECF and E-mail